**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JEFF LINDBURG AND KRISTI LINDBURG, individually and as natural parents and legal guardians of A.L., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>HIGH PLAINS COMMUNITY SCHOOL DISTRICT;<br>MICAH FISHER, in his individual and official capacities; and<br>JASON BROWN, in his individual and official capacities,<br><br>Defendants. | Case No. ___________<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Jeff Lindburg and Kristi Lindburg, individually and as the natural parents and legal guardians of their minor child, A.L. (collectively, "Plaintiffs"), state and allege the following for their claims for relief against Defendants High Plains Community School District (the "District"), Micah Fisher ("Fisher"), and Jason Brown ("Brown") (collectively, "Defendants"):

**THE PARTIES**

1. Jeff Lindburg and Kristi Lindburg (the "Lindburgs") are individuals residing in Polk County, Nebraska. The Lindburgs are the natural parents and legal guardians of A.L. The Lindburgs bring this action on A.L.'s behalf as her parents and next friends pursuant to Fed. R. Civ. P. 17(c)(2), and in their own right to recover expenses they have incurred.

2. A.L. is a minor who, at all times relevant to this Complaint, was fourteen years old and a freshman student at High Plains Community High School (the "School"). Pursuant to Fed. R. Civ. P. 5.2(a)(3), A.L. is identified in this Complaint by her initials.

3. The District is a school district and political subdivision of the State of Nebraska, with its District Office located at 260 South Pine Street, Polk, Nebraska 68654. The District owns and operates the School and acts through its Board of Education (the "Board").

4. The District is a "political subdivision" within the meaning of the Nebraska Political Subdivision Tort Claims Act, Neb. Rev. Stat. § 13-901 *et seq.* (the "PSTCA"), and a "person" subject to suit under 42 U.S.C. § 1983.

5. At all times relevant herein, Fisher was employed as the principal of the School and served as an agent of the District. Fisher acted under color of state law and within the course and scope of his employment with the District. Fisher is sued in his individual and official capacities.

6. At all times relevant herein, Brown was the superintendent of the District and served as an agent of the District. As superintendent, Brown was the District's chief administrative officer and, upon information and belief, possessed final authority to make and approve student disciplinary decisions on behalf of the District. Brown acted under color of state law and within the course and scope of his employment with the District. Brown is sued in his individual and official capacities.

7. Fisher and Brown are each sued in their individual capacities on the claims so designated below, and Plaintiffs seek to hold each of them personally liable for compensatory and punitive damages on those claims. Fisher and Brown are separately sued in their official capacities on the claims so designated below, which are claims against the District.

## **JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over Plaintiffs' claims arising under 42 U.S.C. § 1983 and the U.S. Constitution pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

9. This Court has supplemental jurisdiction over Plaintiffs' claims arising under Nebraska law pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy underlying Plaintiffs' federal claims under Article III of the U.S. Constitution.

10. This Court has personal jurisdiction over Defendants because the District is a Nebraska political subdivision, each individual Defendant resides in and is employed in Nebraska, and the acts and omissions giving rise to this action occurred in Nebraska.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Polk County, Nebraska.

## FACTUAL ALLEGATIONS

12. A.L. was a freshman at the School in the fall of 2025. She was an engaged and productive student, and a member of the School's varsity volleyball team.

13. A.L. held a school permit that allowed her to drive herself to and from school.

**October 17, 2025, Incident**

14. On the morning of October 17, 2025, A.L. drove to school and parked her vehicle on a public street immediately adjacent to, but not located on, School property.

15. During the school day on October 17, 2025, the District, in coordination with local law enforcement officials (the "Officers"), conducted a canine drug sweep in the parking lot of the School. During the sweep, the District placed the School building on "hold" and directed students to remain inside the building with the window blinds closed while the sweep took place.

16. The District maintains a written policy that limits the scope of canine sweeps to "vehicles parked on school property." A.L.'s car was not parked on School property.

17. In direct contradiction to the District's written policy, the District, acting through Fisher and upon information and belief, directed or authorized extending the search beyond School property to encompass vehicles parked on public streets, and a drug-detection canine reportedly alerted in the vicinity of A.L.'s vehicle parked on the public side street.

18. Based solely on the reported canine alert in the vicinity of a vehicle located off School property, Fisher and the Officers removed A.L. from her classroom.

19. The District's 2025–26 Student Handbook (the "Handbook") requires that the District inform parents when law enforcement officers seek access to a student prior to a student being questioned.

20. Neither Fisher nor any other District employee notified A.L.'s parents before A.L. was removed from class and questioned by the Officers, despite the fact that A.L.'s mother, Kristi Lindburg, is an elementary teacher employed by the District and was readily available to be contacted.

21. Following A.L.'s removal from her classroom, A.L. was taken to her vehicle on the public side street, where she was questioned by the Officers. No parent, guardian, or attorney was present during this interrogation.

22. The Officers asked A.L. for consent to search her vehicle. Terrified, confused, and unsure of what was happening, A.L. acquiesced.

23. A.L. was never told that she was free to leave, that she could refuse to answer questions, that she could refuse consent to a search, or that she could contact her parents or an attorney.

24. While the Officers searched A.L.'s vehicle, and while the search remained plainly visible from the School and from the public street, the District prematurely lifted the "hold" on the School and released students from the building. Students exiting the School, District staff, and members of the public observed A.L. standing beside her vehicle as it was searched by the Officers.

25. Almost immediately, A.L.'s and her parents' phones were flooded with messages inquiring about the ongoing search at the School. Rumors began to immediately circulate within the community that A.L. had been caught with drugs.

26. Although the Officers claimed to have observed a "seed" or "crumb" under the rubber mat in the cup holder of the vehicle, the search of A.L.'s vehicle yielded no contraband and the Officers took no further action; no material was retained or tested to determine its contents.

27. After the search was completed and the damage had already been done, Ms. Lindburg arrived at the School, where she found A.L. detained, seized, and in the custody of School officials in the School office, crying and visibly distraught.

28. Fisher informed Plaintiffs that, notwithstanding that A.L.'s vehicle was located off School property, that the search had yielded no contraband, that the Officers had obtained no tangible evidence and had left the School without charging A.L. with a crime, the District would discipline A.L. by imposing a one-day out-of-school suspension on the following school day and by removing A.L. from the varsity volleyball game scheduled for that weekend (the "Discipline").

29. Before deciding to impose the Discipline, neither Fisher nor any other District employee provided A.L. with notice of any charge against her, identified any School rule or standard of conduct she was alleged to have violated, explained the evidence on which any charge was based, or gave A.L. an opportunity to present her version of events.

30. Plaintiffs protested Fisher's and the District's decision and informed Fisher that A.L. was being punished without any evidence that she had done anything wrong.

31. To avoid the Discipline, Plaintiffs suggested that A.L. undergo an immediate drug test to dispel any concerns remaining after the search of her vehicle.

32. Fisher expressly agreed that, if A.L. immediately produced a negative drug test result, A.L. would not be suspended and would be permitted to play in her volleyball game.

33. In reliance on Fisher's promise, and desperate to clear A.L.'s name, A.L. and her mother immediately left the School, purchased a drug testing kit at their own expense, and returned to the School.

34. Upon their return, and at Fisher's explicit direction and under Fisher's supervision, A.L.—a fourteen-year-old girl—was forced to provide a urine specimen to Fisher, an adult male administrator, rather than to the School nurse or any other qualified medical professional.

35. Upon information and belief, the District has no policy or protocol authorizing an administrator to collect or supervise the collection of a urine specimen from a student. Fisher followed no medical, chain-of-custody, or privacy-protective protocol in doing so.

36. A.L.'s drug test was negative, confirming what A.L. and her parents had told the District: A.L. did not use drugs.

37. Despite the negative result, Fisher reneged on his promise and informed Plaintiffs that A.L. would nevertheless serve the one-day suspension and would not be permitted to play in her volleyball game.

38. Plaintiffs demanded to speak with Brown. Brown declared that there "needed to be punishment," offered no explanation of any School rule A.L. had violated or any evidence that she had violated one, and approved and allowed the Discipline to be enforced.

39. A.L. was excluded from her varsity volleyball game and served a one-day out-of-school suspension on the next regular school day, reinforcing the false and misleading rumors spreading through the community relating to the search of A.L.'s vehicle.

40. At no time did Fisher, Brown, or any other District employee send A.L. or Plaintiffs a written statement describing A.L.'s alleged conduct, misconduct, or violation of a rule or standard and the reasons for the Discipline.

41. Under the Nebraska Student Discipline Act, Neb. Rev. Stat. § 79-254 *et seq.*, a principal may deny a student the right to attend school or to take part in any school function for a period of up to five school days only on certain grounds *after*: (i) the principal has investigated the alleged conduct and determined that the suspension is necessary; (ii) the student has been given notice of the charges, an explanation of the evidence, and an opportunity to present his or her version; and (iii) a written statement to the student and parent has been sent by the principal within 24 hours or such additional time as is reasonably necessary. *See* Neb. Rev. Stat. § 79-265.

42. Under Neb. Rev. Stat. § 79-267, drug-related conduct constitutes grounds for discipline *only* when it occurs on school grounds; in a vehicle owned, leased, or contracted by a school and used for a school purpose; or at a school-sponsored activity or athletic event. None of those circumstances was present here.

43. The District had no evidence of any such violation when it imposed the Discipline, and it had affirmative evidence—a fruitless search and a negative drug test—that no such violation occurred.

44. To date, the District has not articulated how A.L. violated any law, District policy, or School rule.

45. Following the search and subsequent Discipline, members of the School community and School employees began spreading rumors that illegal drugs had been located in A.L.'s car. These statements were false and portrayed A.L. in a negative light.

46. As a result of Defendants' conduct, A.L. has suffered, and continues to suffer, severe emotional distress, humiliation, embarrassment, and damage to her reputation among her classmates, teammates, teachers, and the broader community.

47. Since October 17, 2025, A.L. has been transformed from an active, engaged teenager who excelled and enjoyed volleyball and school activities into a withdrawn and despondent young woman. A.L. has had to leave class on multiple occasions to seek out the School counselor due to Defendants' conduct on October 17, 2025.

48. The psychological toll on A.L. has been so significant that, in addition to School counseling, A.L. requires ongoing professional mental health treatment. A.L.'s emotional distress is medically diagnosable and significant.

49. A.L. also lost a day of instruction, was excluded from a varsity athletic contest, and has been branded within her school and community as a drug user.

50. Plaintiffs have incurred out-of-pocket expenses as a result of Defendants' conduct, including the cost of the drug testing kit and the cost of A.L.'s mental health treatment.

**Plaintiffs' Notice of, and Defendants' Failure to Remedy, the Violations**

51. On November 7, 2025, Plaintiffs' counsel sent a letter to the Board detailing the events of October 17, 2025, explaining the constitutional, statutory, and policy violations described herein, requesting that the District rescind and expunge the Discipline, and requesting that the District preserve all relevant records.

52. The District did not provide a substantive response to the November 7, 2025, letter and did not rescind or expunge the Discipline.

53. Upon information and belief, the Discipline and related drug-related notations remain in A.L.'s education records and in the District's internal records.

54. Upon information and belief, the District has failed to train or supervise its administrators and staff regarding the limits of the District's authority to search or discipline students for off-campus conduct, the Handbook's parental-notification requirement, the circumstances under which student drug testing may be required and how it must be conducted, the procedural requirements for student suspensions, and the confidentiality of student disciplinary matters.

55. On March 3, 2026, and within one year of the incident on October 17, 2025, Plaintiffs filed a written notice of claim pursuant to Neb. Rev. Stat. §§ 13-905, 13-919, and 13-920 with Chad Hoffman, Secretary of the Board. The notice was received by the District on March 4, 2026. The notice of claim asserted Plaintiffs' claims against the District, Brown, and Fisher.

56. More than six months elapsed after the filing of Plaintiffs' notice of claim without a final disposition of the claim by the District.

57. On September 16, 2026, Plaintiffs withdrew their claim from consideration by the District by written notice in full satisfaction of all conditions precedent necessary to bring a claim under the PSTCA pursuant to Neb. Rev. Stat. § 13-906.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Unreasonable Search and Seizure**
**(Against Fisher in his Individual Capacity)**

58. Plaintiffs refer to and incorporate the allegations above as if fully set forth herein.

59. At all relevant times, Fisher acted under color of state law.

60. The Fourth Amendment to the U.S. Constitution, made applicable to the States through the Fourteenth Amendment, protects students against unreasonable searches and seizures by public school officials.

61. Fisher seized A.L. by removing her from class and delivering her, without notice to her parents, to the Officers for questioning about a suspected criminal offense involving property located off School grounds.

62. The seizure was not justified at its inception by reasonable grounds to suspect that A.L. had violated any School rule, and it was not reasonably related in scope to any legitimate school objective or school-sponsored activity; in fact, the search clearly violated the established policies and practices of the District.

63. The ensuing search of A.L.'s vehicle was conducted without a warrant and without any applicable exception to the warrant requirement, and any purported consent by A.L. was not voluntary given A.L.'s age, lack of prior experience with law enforcement, removal from the classroom she was legally compelled to attend, lack of parental consent, and lack of access or notice to her parents or an attorney.

64. A.L. would not, and did not, reasonably believe herself to be free to terminate the search.

65. The search of A.L.'s vehicle occurred off School property and did not occur in the context of any school-sponsored activity, making the District's authorization of and participation in the off-campus search unlawful.

66. Fisher acted jointly with the Officers in removing A.L. from class, delivering her to the Officers, and facilitating the questioning and search. Fisher knew or reasonably should have

known that his conduct would cause A.L. to be subjected to the questioning and search, and his conduct was a direct and proximate cause of the unreasonable seizure and search.

67. A.L.'s rights to be free from these unreasonable seizures and searches were clearly established at the time of Fisher's conduct, such that a reasonable school official would have understood that his conduct violated those rights.

68. Fisher acted intentionally, or with reckless and callous indifference to A.L.'s federally protected rights.

69. As a direct and proximate result of Fisher's conduct, A.L. suffered damages, including emotional distress, humiliation, reputational harm, and lost educational and extracurricular opportunities, and Plaintiffs incurred expenses.

70. Plaintiffs are entitled to compensatory damages, punitive damages, and their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Unreasonable Search by Urinalysis**
**(Against Fisher in his Individual Capacity)**

71. Plaintiffs refer to and incorporate the allegations above as if fully set forth herein.

72. At all relevant times, Fisher acted under color of state law.

73. The Fourth Amendment to the U.S. Constitution, made applicable to the States through the Fourteenth Amendment, protects students against unreasonable searches and seizures by public school officials.

74. The collection and testing of a student's urine is a search within the meaning of the Fourth Amendment.

75. Although Plaintiffs initially proposed a drug test in an effort to clear A.L.'s name, Fisher made A.L.'s submission of a urine specimen the condition for withdrawing the Discipline,

directed the collection of the specimen, and personally supervised it. The urinalysis was therefore a search conducted by and at the direction of a District official.

76. The search was not justified at its inception. Fisher had no reasonable grounds to suspect that A.L. had used or possessed any controlled substance on School grounds, at a School-sponsored activity, or in any manner within the District's disciplinary authority. The only asserted basis for suspicion was a canine alert near a vehicle parked off School property, but the Officers collected no evidence of illegal drugs following a search of the vehicle.

77. The urinalysis was not conducted pursuant to any random drug testing program adopted by the District, and it was not otherwise authorized by District policy.

78. The search was excessively intrusive in light of A.L.'s age and sex and the nature of the suspected infraction. Fisher, an adult male administrator, supervised the collection of a urine specimen from a fourteen-year-old girl, in a school setting, without the involvement of the School nurse or any qualified medical professional and without any privacy-protective protocol.

79. Any consent to the urinalysis was not voluntary. It was obtained under the threat of imminent discipline and induced by Fisher's representation that a negative result would end the Discipline, a representation on which Fisher later reneged.

80. A.L.'s right to be free from such an unjustified and excessively intrusive search was clearly established at the time of Fisher's conduct.

81. Fisher acted intentionally, or with reckless and callous indifference to A.L.'s federally protected rights.

82. As a direct and proximate result of Fisher's conduct, A.L. suffered damages, including emotional distress, humiliation, and invasion of her bodily privacy and dignity.

83. Plaintiffs are entitled to compensatory damages, punitive damages, and their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – Procedural Due Process Violations**
**(Against Fisher and Brown in their Individual Capacities)**

84. Plaintiffs refer to and incorporate the allegations above as if fully set forth herein.

85. At all relevant times, Fisher and Brown acted under color of state law.

86. A.L. is entitled to a public education that is a recognized property interest protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

87. Nebraska guarantees free instruction in its public schools; compels school attendance; and permits students to be excluded from school or school functions only on specified grounds and in accordance with specified procedures.

88. A.L. also has a recognized liberty interest in her name, reputation, honor, and integrity, which is protected by the Due Process Clause and which is implicated by disciplinary action premised on alleged drug-related misconduct.

89. The Discipline deprived A.L. of these protected interests. A suspension from school is not a de minimis deprivation and may not be imposed in disregard of the Due Process Clause.

90. Due process requires that any student be given oral or written notice of the charges against them, an explanation of the evidence the authorities have, and an opportunity to present their side of the story before a student is suspended from school.

91. Fisher and Brown deprived A.L. of her protected interests without due process of law by, among other things: deciding to impose the Discipline before providing A.L. with notice of any charge or any opportunity to be heard; failing to identify a School rule that A.L. allegedly violated; failing to explain evidence supporting a charge against A.L.; disregarding the evidence

A.L. was permitted to present and imposing the Discipline on a predetermined basis because there "needed to be punishment"; and failing to provide a written statement.

92. Brown personally participated in the deprivation by approving and enforcing the Discipline with knowledge that A.L. had received no notice of any charge, that no evidence supported any charge, and that her drug test was negative.

93. A.L.'s right to notice and an opportunity to be heard before suspension was clearly established at the time of Fisher's and Brown's conduct, such that a reasonable school official would have understood that his or her conduct violated that right.

94. Fisher and Brown acted intentionally, or with reckless and callous indifference to A.L.'s federally protected rights.

95. As a direct and proximate result of Fisher's and Brown's conduct, A.L. suffered damages, including the loss of a day of instruction, exclusion from a varsity athletic contest, emotional distress, humiliation, and reputational harm. At a minimum, A.L. is entitled to nominal damages for the denial of procedural due process.

96. Plaintiffs are entitled to compensatory damages, nominal damages, punitive damages, and their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Municipal Liability**
**(Against the District, Fisher, and Brown in their Official Capacities)**

97. Plaintiffs refer to and incorporate the allegations above as if fully set forth herein.

98. The District is a "person" subject to liability under 42 U.S.C. § 1983 for constitutional deprivations caused by its policies, customs, or the decisions of its final policymaker, Brown. The District is not entitled to qualified immunity.

99. Plaintiffs' claims against Fisher and Brown in their official capacities are claims against the District.

100. The violations of A.L.'s rights under the Fourth and Fourteenth Amendments alleged above were caused by the District's policies, customs, and decisions, including: the decision by Brown, the District's final policymaker with respect to student discipline, to approve and enforce the Discipline without notice, without an opportunity to be heard, and without evidence of any violation; the Board's ratification of the Discipline by refusing to rescind it after receiving notice of Plaintiffs' claims describing the violations in detail; the District's failure to train and supervise its administrators regarding off-campus searches, parental notification, student drug testing, and suspension procedures, constituting a deliberate indifference to the constitutional rights of the students whom administrators are charged with supervising; and the District's practices of extending canine sweeps to vehicles parked off School property and imposing short-term suspensions from school activities without the required notices and opportunity to be heard.

101. The District's policies, customs, and decisions caused the violations of A.L.'s constitutional rights.

102. As a direct and proximate result of the foregoing, A.L. suffered the damages described herein and Plaintiffs incurred expenses associated with such damages.

103. Plaintiffs are entitled to compensatory damages against the District, injunctive relief requiring the District to rescind and expunge the Discipline from all District records, and their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION
### Neb. Rev. Stat. § 13-901 *et seq.* – Negligent Infliction of Emotional Distress
### (Against the District, Fisher, and Brown in their Official Capacities)

104. Plaintiffs refer to and incorporate the allegations above as if fully set forth herein.

105. The District and its employees, including Fisher and Brown, owed A.L., a minor student in their care and custody at the time of the incident on October 17, 2025, a duty to exercise reasonable care in their supervision and treatment of her, including a duty to comply with all District policies governing parental notification, canine sweeps, and student discipline.

106. The District, Fisher, and Brown breached that duty by negligently extending the canine sweep beyond School property; removing A.L. from class and subjecting her to interrogation by School officials and the Officers without first notifying her parents; lifting the "hold" and releasing students while A.L. was detained and the search of her vehicle was conducted; requiring a fourteen-year-old girl to provide a urine specimen under the supervision of an adult male administrator rather than a qualified medical professional; imposing the Discipline without notice, explanation of evidence, opportunity to respond, and written statement; and failing to prevent District staff members from disseminating false information about A.L. None of this conduct was authorized by any applicable statute, ordinance, resolution, rule, or regulation.

107. A.L. was the direct victim of the negligent acts and omissions of the District, Fisher, and Brown, and she was placed within the zone of danger created by such negligence.

108. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages, including A.L.'s emotional distress that is medically diagnosable and significant, which has required ongoing professional mental health treatment, and that is so severe that no reasonable person could be expected to endure it.

109. Plaintiffs are entitled to recover their damages from the District, Fisher, and Brown in an amount to be proven at trial, including the cost of A.L.'s past and future mental health treatment.

**SIXTH CAUSE OF ACTION**
**Neb. Rev. Stat. § 13-901 *et seq.* and § 20-204 – Invasion of Privacy (False Light)**
**(Against the District, Fisher, and Brown in their Official Capacities)**

110. Plaintiffs refer to and incorporate the allegations above as if fully set forth herein.

111. The District, Fisher, and Brown, in engaging in the above-referenced conduct, publicly portrayed A.L. in a false light by subjecting her to an unlawful vehicle search in public and beyond the School's property, prematurely lifting the "hold" on the School and releasing students while the search was conducted, removing A.L. from her volleyball game, and suspending A.L. from school despite having no evidence of misconduct, thereby communicating to the school community that A.L. had committed some drug-related offense.

112. Such false portrayal is nondefamatory and would be highly offensive to a reasonable person.

113. The District, Fisher, and Brown had knowledge or acted in reckless disregard of the falsity of the publicized matter, as no evidence of wrongdoing was established.

114. The matter was portrayed to so many persons that it was substantially certain to become, and did become, public knowledge in the School and the community.

115. As a direct and proximate result of the false portrayal of A.L., A.L. has suffered damages, including emotional distress, humiliation, and harm to her reputation.

116. Plaintiffs are entitled to recover damages from the District, Fisher, and Brown in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek to recover all monetary, general, special, compensatory, nominal, and other damages as permitted by law; punitive damages against Fisher and Brown in their individual capacities; pre- and post-judgment interest, where applicable; reasonable

attorneys' fees, costs, and other damages; and equitable relief, including an injunction requiring the District to rescind the Discipline and to expunge it, and remove any drug-related notation concerning A.L., from her education records and internal District records, and for such other and further relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable in the above-captioned matter.

**REQUEST FOR PLACE OF TRIAL**

Pursuant to NECivR 40.1(b), Plaintiffs request that trial of this matter be held in Lincoln, Nebraska.

Dated: October 28, 2026.

JEFF LINDBURG AND KRISTI LINDBURG, individually and as natural parents and legal guardians of A.L., a minor child, Plaintiffs,

By: /s/ John P. Barrett

John M. Lingelbach, #20429
John P. Barrett, #27544
KOLEY JESSEN P.C., L.L.O.
One Pacific Place
1125 South 103rd Street, Suite 800
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
John.Lingelbach@koleyjessen.com
John.Barrett@koleyjessen.com

Attorneys for Plaintiffs.